And our next case for argument this morning is Thomas Russell v. Zimmer, Inc. Mr. Malley. Good morning, Your Honors. May it please the Court, my name is John Malley. I'm privileged to represent Dr. Russell and his fellow inventors in this matter and be before you on this appeal. Respectfully, the decision below should be reversed, dismissing the First Amendment complaint that sets forth a breach of contract claim against the defendant. This is a case of these inventors being denied the opportunity to even start discovery to further build their case against Zimmer. But certainly at the 12B6 stage under this Court's precedence, the Supreme Court's precedence, they have stated a plausible breach of contract claim. How do we know that, Your Honors? Well, from the detailed complaint, they set forth the history that they negotiated a reduced purchase price for the innovative products that they had developed, in part for a multi-year through 2033 burnout stream of income, a very common setup in acquiring intellectual property. And they did it not with just a wish that it might happen, but with a contractual standard that was set forth verbatim in their complaint for commercial, regional standards. Right. Now, according to the language of the contract, commercially reasonable efforts are those that Zimmer would apply in the ordinary course of business while satisfying a comparable obligation. So don't you have to show what Zimmer does with comparable products? Yes, Your Honor. That is exactly correct that the contract has that language. And we have pleaded that that standard has been violated and given examples of actions, for instance, stopping production, not meeting purchase orders. Those are examples, as pleaded, of what Zimmer would be doing with comparable products. Now, obviously in discovery, there would be more in-depth analysis of that. But that is a plausible, more than threadbare claim to match this Court's standards and the Twombly and Iqbal standards to satisfy the Rule 8 and the Rule 12b6 standards. I think the problem is not a lack of detail. It's the lack of connection to the contractual provision in question, which establishes the measure for commercially reasonable efforts and keys it to Zimmer and what is ordinary and reasonable within its own operations, not some objective industry standard. This would suffice for an objective industry standard if the contract in question required commercially reasonable efforts measured by that standard, but it doesn't. Yes, Your Honor. It does set forth, the complaint sets forth that precise standard. Do not run away from that inward-looking Zimmer-focused standard. Remember here that Dr. Russell, 37-year veteran in this area of innovative surgical techniques and products, Zimmer's a known quantity in the field and that he's involved in his patented number of products. And so he is the basis for these allegations that these types of steps are not what Zimmer would take under the contractual standards. And also, this court's precedent requires that we have to look at what would these plaintiffs have in terms of available information at the time of pleading, that commensurate information. And this is certainly sufficient for that standard that would allow then further discovery for, well, what is it? For instance, we don't see from any of the facts that are pleaded that Zimmer said, for instance, remember this is 2016 to 2019, oh, we had a supply chain issue. Oh, the FDA revoked the approval that these individuals had obtained through their hard work and ingenuity. We don't have yet a pandemic issue that informed the issue. Those are the types of things that would be potential excuses for not doing this. Just recall that the commercial reasonableness standard that they agreed to is each quarter they shall use commercial reasonableness based upon what they do with their other products to sell this product. Well, it's even more narrow than that. It's based on what they do with a comparable product or technology, similar to the earn-out products in terms of commercial potential development stage and product life. In determining whether that standard has been met, the entire business, financial, commercial, scientific, clinical, and regulatory context shall be considered. That leaves a lot of business discretion to Zimmer. This isn't a very valuable clause at bottom because it invests so much discretionary room for movement in the buyer. But respectfully, it still is a standard. They could have negotiated and paid more for it. We have total discretion. It's a commercially reasonable standard based on how they do their business otherwise, as you've noted. And so, for instance, the examples are allowing regulatory approval to expire, dismantling equipment, failing to meet customer orders, terminating communication with the vendors, even though they have this obligation, all the way through 2033, every single quarter to do these things. And they have stopped. What do we do with the language that Zimmer shall have the right to operate their business in accordance with their own commercially reasonable discretion? What do we do with that? We respect it, but it's still a standard and a measure that they have to live up to. And we have pleaded 21 examples of how they did not do that. And discovery should show more. Go ahead, George. Mr. Malloy, so in essence, what you're saying and what the clause says is that Zimmer has to treat us like A, B, and C. And the problem, I see it, is that there's nothing in the allegations as to how Zimmer treats A, B, and C. And so, if your claim is that your client is being treated less favorably than A, B, and C, doesn't the complaint have to at least say, provide a basis of why we would believe that Zimmer or how Zimmer was treating A, B, and C and why your client is being treated less favorably? And the complaint doesn't really do that as far as I can see. Senator, two responses to that. First of all, the complaint at paragraph 61 says that the following actions show Zimmer failed to use the efforts right from the standard quoted above expressly. And list those 21 examples. Again, the plaintiffs here are sophisticated trauma surgeons, patent holders, developers of these types of products, and know Zimmer. So, it's possible that what is alleged is based on what they know Zimmer to be doing otherwise. Then we go to discovery, Your Honor, if we look at this quote expressly. Aren't your clients just guessing as to what they think Zimmer is actually doing with this other product? And then saying, well, you know, that's a standard that we think Zimmer is holding itself in its own other business lines, and it's not doing that there. To me, that seems more speculative than plausible allegations. Your Honor, under the precedent, we believe it does meet a plausibility. It's not, is it more probable than not, is it hypothetical that it could be the case. And then when we look at Olson from this court, that the pleading burden is commensurate with the amount of information available to plaintiffs. If this court is going to shut plaintiffs off from being able to conduct discovery in these kinds of commercially reasonable standard provisions, then it would be a worthless clause, even though it's contractually in there. If we then look at Brooks from this court, if there's a reasonable expectation to discover real evidence supporting the allegations, and these plaintiffs were denied that opportunity, including the opportunity to amend, and I'll turn to that briefly, Your Honors, that going back to Foman v. Davis and, of course, Rule 15a.2, that the proper outcome here, if the court were to determine that, yes, there is more required, then leave to amend upon the first dismissal would be appropriate. And the decision that the court made was not that there was undue prejudice, and there would not be undue prejudice from responding to another complaint, either answering it or moving to dismiss. Instead, Your Honor, found futility. That is reviewed under Norwin on a de novo basis, on the legal basis of futility, and there's certainly, again, no reason to think that the plaintiffs wouldn't be able to plead more to meet the ABC type of standard that Your Honor has laid out to compare with other companies. They'd further look at the public information that's available and make that attempt. And they should certainly at least be entitled to that opportunity to leave to amend to put that case before the district court. But your client did have that opportunity to put that before the district court, and it didn't do so. I mean, it had the opportunity to tell the district court what additional allegations it would consider bringing if it were given the chance, but your client was silent before district court in that regard. Respectfully, Your Honor, our clients did what they thought was the right thing to do, to trim the claims. There was no objection to the amendment from Zimmer, and they amended, and it went down just to the contract claim. Now that's been dismissed, and under Foleman and Rule 15A2, there's been this dismissal. They should have the right to try to get a proper pleading that would pass muster if a loud amendment would do so, respectfully, Your Honor. I assume my time has expired. Thank you. Thank you. Mr. Brown. Good morning, Your Honors. May it please the Court, Troy Brown for Appellee Zimmer, Inc. I'll start with a few of the questions that Your Honors asked of my colleague, which is one benefit that Zimmer has in connection with both the original complaint and the first amended complaint is the fact that we don't have to guess about in this panel, and the district court didn't have to guess about the context within which these two sophisticated parties decided to come to the table to negotiate with sophisticated counsel a merger and acquisition transaction because plaintiffs pleaded it in their complaint. They pleaded that they accepted a $17 million cash payment for a business that they have alleged was failing. They themselves, despite the sophistication that my colleague and in the briefing has talked about with these inventors and developers of this Enforce product, had failed sales. They sold the business, and they negotiated at the bargaining table the provision they were able to secure. Like any parties, particularly under Indiana law that looks at the sanctity of the express terms of a contract when sophisticated parties reach a reasoned bargain, and that is a completely unqualified, no guarantee, fully disclaimed, inward-facing, commercially reasonable efforts provision. And Judge Sykes, you actually asked counsel whether or not had this been an outward-facing provision, like what we've briefed, inward versus outward, which is a more seller-favorable provision because it has objectivity looking outside the market. What might comparable buyers have done in this circumstance? And I think your comment, Your Honor, was then it might have passed muster, and I would suggest that under Norvana, that's a perfect case from Delaware Chancery Court to look at, or even outward-facing, seller-favorable provisions, like what was at issue in a medical device case, Norvana, a product for cerebral aneurysms. The court looked at that outward-facing and looked at a plausibility standard that, again, in Delaware state pleading, is more favorable for plaintiffs, a lower standard, reasonable conceivability, which the Delaware Supreme Court has said is actually lower than the Twombly standard in federal court. It gives the plaintiffs an easier burden. And the court said even there, with a seller-friendly outward-facing provision, plaintiffs couldn't meet their burden because what they didn't do, to both Your Honor's questions to my colleague, is tether somehow, not just pronouncements of actions or inactions, as paragraph 61 of the first amended complaint speaks to, occurred in a vacuum. But as Judge Springman looked at and analyzed comprehensively, what they haven't been able to do twice and what the judge found would be futile in trying to do a third time, despite opportunities previously, is tether factually to meet the plausibility standard. How an action or an inaction looked at in a vacuum could possibly constitute a breach of this inward-facing, extremely buyer-friendly Zimmer introspective provision that doesn't just look necessarily at what Zimmer might have done vis-a-vis product X that it might have acquired in 2015 or product Y that it might have acquired in 2020. What it looks at, as the language says very comprehensively in 205A and E, is what would Zimmer do in looking at its entire business and financial portfolio and needs at a particular time, and I'm paraphrasing obviously, and look inward. And it didn't stop there, as Judge Lee, Your Honor, commented, which is it also said we are expressly disclaiming that either we may do things the way your learned inventor sellers might have done things in the past decades when they were inventing these products. We might do things differently that guarantees no potential earn out in the future because you've told us, and you've now told this court and the underlying district court, that this business was struggling and on its way to bankruptcy. The reason parties sometimes agree to earn out provisions, as your honors know, is because there is a disconnect at the negotiating table in valuing the assets sold or the stock sold. There was a disconnect. Mr. Brown, forgive me, but if Zimmer had amended its complaint to say the following, would it have stated a valid claim? Zimmer has used a far greater level of effort, expertise, and resources to fulfill its obligations with a comparable product to which it has comparable obligations than it has used with respect to the earn out product. Would that be a valid claim? So I'll answer that, your honor. Thank you. Two ways. First, I'll answer it not entirely directly, and then I will answer it directly. The not entirely directly answer is it would depend on the overarching complaint. If there were a second amended complaint and whether or not that statement taken in isolation and perhaps not tied to a particular product and particularly plausible factual tethering, would or would not overcome the pleading hurdle. I'll answer it more directly, which is I don't believe that plaintiffs can make that allegation, and if they were able to, this case, as Judge Springman observed in her futility and prejudice analysis, was two and a half years old. This was an original complaint filed intentionally in the wrong district court that had to be moved to transfer from the Western District of Tennessee to the court that the parties agreed it would be in in the Northern District of Indiana. There was an original complaint that was then pared back after we filed a motion to dismiss, identifying all of the problems with both the contract and the noncontract and fraudulent inducement claims, and then an amended complaint was filed. And in response to the challenges to the amended complaint, as Judge Springman identified in her futility and prejudice analysis, what plaintiffs didn't do again is say, Your Honor, here's how we would tether factually to a breach of Section 2.05 that might meet plausibility under this provision. So, Your Honor, had they pleaded that with specific facts as to a specific acquired product and then tied it to how that allegedly breaches Section 2.05, perhaps I would have had a harder fight at the district court and a harder ability here. How is a seller in this situation supposed to acquire that information necessary to plead to the standard that you're articulating with one of these inward-facing clauses? It's an excellent question, Judge Sykes, and I've thought about that because it's the obvious question that one would get. What I think plaintiffs have suggested and appellants have suggested is, well, one could never overcome a standard as a seller with an inward-facing provision because absent some other information, how, without a fishing expedition into discovery, could we tether conduct to breach of this inward-facing? And the answer is threefold, I believe. And two of them is not a particularly pleasant answer for the sellers of the world, but it is the sanctity of contract in Indiana that requires it, and it is negotiate a different provision. If you want to be protected in potential litigation post-closing such that you have the ability, and there are a variety of techniques that sophisticated deal counsel, like what these sophisticated sellers had, to protect themselves. Like post-closing audit and information rights that sellers, even when they have inward-facing provisions like this, negotiate for themselves. Hey, this potential earn out goes out to 2033. Maybe as sellers, even if you have little bargaining power because you're about to go bankrupt, should negotiate for themselves protections, like every quarter we're going to solicit information. And part of that information could be how is Zimmer treating similar products, whether they are fixation products, like the Enforce fixation system that was acquired here, or other hip or orthopedic products. But they didn't do that. They could also have secured for themselves from the due diligence process some information about how Zimmer had treated pre-closing acquisitions. They had due diligence, and these parties actually, as is pleaded, had a history together. These were not strangers coming to the table to try to acquire a new product. The parties had worked together in the distribution field. These inventors knew Zimmer at the time, knew Zimmer Biomet, the merged company ultimately, and so had they wanted to protect themselves, they could say, hey, we know you've acquired these four other products in the last 10 years. We'd like information to create for ourselves a pre-closing baseline against which we might be able to measure this very Zimmer-favorable inward-facing provision. And they didn't ask for that. The other thing, Your Honor, that they could do, as any sophisticated party can, is they can walk away from the deal table and run the business themselves or find a different buyer. If the best they could get is this type of inward-facing provision with no due diligence protections and no post-closing audit and information protections with a section that reads as this one does, then that is the best bargain they were able to draw, and they cannot rewrite through litigation and appeal the provisions in a contract that they agreed to at the bargaining table. I see my time is up. All right. Thank you. Thank you, Your Honors. Mr. Maley. Briefly, Your Honors, first turning to Judge Rovner's question, if the language said, as Her Honor posited, that this effort was not comparable to others, essentially, again, when you go back to paragraph 61 saying, pleading that they did not meet the standard and listing those examples such as letting regulatory approval pass, Zimmer does not do that with others. They're a large, successful global company. Judge Sykes, your question about isn't this why discovery is needed, essentially, and, yes, that aligns with this Court's precedent from Olson and Brooks, that the burden on pleading is commensurate with the information available to the plaintiffs, and Zimmer and no other company gets to contract that away from a litigant. And lastly, on amendment, for this Court's precedent in St. Anthony and other cases, St. Anthony Hospital, the standard is to allow amendment usually at least once after dismissal. That hasn't happened. The futility finding that was made under Norwin is reviewed de novo, and it's hard to say that this would be futile given the allegations that have already been made. Respectfully, I would add to that. Your Honor, what would you do if granted leave to amend by way of acquiring the necessary information to plead to the standard in the contract? Yes. Your Honor, we would, with our clients who have knowledge in this industry, we would scour every publicly available product that is out there, and I'd show what they have said publicly about it, their publicly traded company, and it would be a very, very lengthy pleading that would leave no question at all that we have matched up these failures, such as they let regulatory approval lapse for our product. They didn't do that for these comparable products. So there is publicly available information that addresses itself to the terms of the inward-facing clause. There should be, in some respects, although discovery to line up the comparable products would certainly be helpful, Your Honor. All right. Thank you. Thank you. Thanks to both counsel. The case is taken under advisement.